May it please the court, good morning my name is Pierre Ianni, I'm here representing the plaintiff appellant Inventio in this matter. There's several issues up on appeal and I'd just like to focus my attention to the issues. The first one is the holding of obviousness from the district court and our argument there is basically that the prior art that was shown and how it was described and analyzed to the jury did not show every single element of the claimed invention and basically the defendant's expert utilized common sense or just personal experience to fill in some of the missing pieces and a lot of that was basically uncorroborated testimony and without any real specific reference to a The one piece of the claimed combination that clearly wasn't shown was the modernizing device and specifically its converting of a destination signal into a call report. Is it your view that it would be an error of law to ever conclude that obviousness is appropriate in a situation where there isn't prior art with regard to one of the elements? Well it depends what the element is and here this was a significant aspect of the claimed invention. But you do appreciate that as a matter of law you could have for example a one reference obviousness rejection which by nature of what I'm describing would mean that not every element is in fact. That is technically correct. I just wanted to make sure you weren't arguing the legal point that the failure to find that additional prior art I mean that additional element in the prior art was de facto. Not necessarily de facto but there has to be some basis for including it in the combination and even KSR says that when it talks about invalidating it's kind of like piecing together the pieces of a puzzle. To me that means the pieces of the puzzle have to be there somewhere and someone then has to show you and guide you how those pieces fit together. Is this just your argument with regard to claim three or is this an argument that you think applies more broadly to other claims? This also applies to the independent claims as well and specifically the ones that include that aspect of the modernizing device where it converts the destination signal from a certain signaling format into a call report which itself is a completely different type of signaling format that's compatible with the existing old elevator technology. The other troubling aspect of the holding was that the discussion by the defendant's expert which was adopted by the court was basically well even if that element is not in the prior art it would have been within the knowledge or the ability of a person of ordinary skill to design it and that argument hinged on the fact that well if you knew what the input was to this element and you knew what the output was that you can then design it. To me that is hindsight reconstruction because being able to identify what the inputs are and what the outputs are for a certain element is kind of working backwards from the invention. What if you have motivation though and you know what the inputs are and what the outputs are and there's motivation to make the conversion they have here so that the old system could talk to the new system? The only motivation that was presented was kind of vague and non-special. The only motivation that was really presented was modernizing of elevator systems is a hot and up and coming field that can generate a lot of revenue. Therefore elevator companies would focus their efforts on it. That was really the primary adventure. Are you talking about modernizing elevators from one system to another? Yes and there were a myriad number of ways of doing that which had been known and actually it's not just modernizing by itself but it's modernizing in a specific way to include this destination dispatch technology. That was also known in the prior art but to a lesser extent but the specific details of what the claim is talking about that was converting from the destination signal format of the new technology to the call report of the existing technology. That piece is what was not known in the prior art and the only discussion that was given was really in the nature of kind of very generalized that while it was known to modernize it was known to add the destination dispatch technology. It was more than that. That the approach in the prior art using the conventional technology and substituting one control system over another involved something that's quite similar to what was done in your patent with respect to the destination. Well similar in a very very general sense but if you look at the closest piece of prior art on this which was the OVASCO reference which was actually in front of the patent office during the prosecution. That didn't show this kind of conversion and it's not just a simple translation as it was characterized below. Translation is... But that's a question of fact and we have a jury verdict on obviousness and we have to presume all...it was a general verdict right? You didn't ask... It was a general verdict yes. You didn't ask for all these specific facts and we have to presume them all and so whether it's a simple conversion or not it was argued below to be simple by them. It was argued below by you not to be. The jury found in favor of them. How can I say that's not supported by... Well I guess it's... The way you're describing it is a quintessential fact finding about which there's disputed evidence. Yes but it's the ultimate legal conclusion of obviousness. So the ultimate legal conclusion is not at issue. What's at issue is would it have been simple to make that conversion? Would one of skill in the art know based on the prior art references that disclosed similar controls that this was simple? That's not the ultimate determination is it? You think that's the ultimate determination and not one of the underlying facts? What the level of skill in the art is? What the prior art was that they knew about? That's all part of the underlying facts yes. The second issue that I would like to talk about is the exclusion of the secondary considerations of non-obviousness which severely prejudiced our ability to rebut any kind of obviousness determination. You're talking about Freedly? That's part of it. The overarching issue is the court's insistence from the get-go that you need an expert to put on evidence to show that you as the patentee practice your own patents. Well I don't think he said that. I think he said that you can put in evidence but you can't use this guy as an expert to do a claim construction comparison based on a claim chart. But the fact you'd already examined Freedly about whether some of these limitations existed in your prior art right? Well Freedly the testimony that was being developed with the inventor Freedly was to show how the patentee makes its own installations. And then the next step would be to show how that matches up with at least one claim of the patent to show that the patentee actually practices their own patents. Yeah but look on page 38 of the blue brief you say Dr. Freedly adduced more than enough evidence from which the jury could have concluded that phased modernization practices the patents in suit. That is the testimony that he gave before he got to the claim chart. Yes. So you yourself said he put in enough evidence to make the conclusion that your prior art practiced the patent. But that was really the predicate to being then able to walk through the claim element by element and then to show here's where it matches up and therefore what we install practices our own patents. Okay but your statement that you weren't allowed to put on evidence to show that you were practicing prior it's not true. You did put on evidence you say in your own brief that it was sufficient. It's just when he got to the claim chart that he said no that's the judge said no. It's not practicing the prior art it's practicing our own patent. It's the second part. So he was allowed to testify factually. We did this this this this. It's the second part matching that up to the claim elements or the claim chart. So you did get to put in evidence that that your installations practice the path. No we put in evidence of factually what the installation. I'm confused. Are you you're fighting Judge Dyke on whether or not you could put in what amounted to expert testimony. I don't see how it could be wrong when the district court said no. But I really thought that your argument had to do with his exclusion and motion eliminate two and three of commercial success and copying evidence. And you're quibbling with Judge Dyke over something that I'm having trouble understanding where it gets you or why you're saying it and why you aren't moving on to what I thought I understood your actual argument. Yeah the judge the district court basically said as a preliminary matter before you can introduce any evidence of copying or commercial success. You have to show that you practice your own path. Right. And you're saying that you produced enough evidence to do that. So why didn't you ask him to allow you to put in evidence of nexus once in your view you established that your installations practice the path. Well he didn't allow us to complete the second part of showing that we actually practice. Did you ask him. Yes. After you submitted the evidence. Sorry. After you asked him you submitted the evidence of how that your commercialization worked. And then he prevented you from having your expert do the element by element analysis. At that point did you try to put on your evidence of secondary considerations on the basis that the jury had before it the claims and the jury had before it a description of how your commercialization worked. After we had Dr. Freedly present the factual evidence of how the installations are done there was a sidebar discussion with the court and the judge said if you're going to have him talk about how this matches up with the claims I'm sure the other side is going to object and I'm going to sustain it. And so since if you can't do it then you shouldn't try it. But that doesn't have anything to do with you're not answering Judge Stoll's question and you're sort of going away from the point that I was trying to help you get to. That has nothing to do with did you ask can we now despite not having an expert match it up can we now introduce our commercial success evidence and copying evidence. Why were you precluded from doing it? The decisions on the motions in Luminate 2 and 3 had excluded any of that evidence. I read the whole transcript. He first said I'm going to grant motions in Luminate 2 and 3. Then you convinced him Mr. Freedly. I don't know if I'm saying his name right. What is his name? Freedly. Freedly. Mr. Freedly can testify and show that our commercial embodiment falls within our own requirement. Then you went ahead and you adduced what you argue in the brief to be sufficient testimony to establish that. And it's my reading of the transcript that the district court said okay well then I'll hold off on motion in Luminate 3 until you go ahead and do that and see. So I don't know that I interpret this record as him having granted that motion in Luminate precluding you from introducing commercial success and copying evidence. Where did he grant that motion in Luminate? Well he basically did that in the sidebar discussion where after we had presented the factual background of what is done we were then going to match it up with the claim language. You didn't need to match it up with the claim language. It doesn't have anything to do with whether or not you can introduce the commercial success and the copying evidence. That's what I don't understand. Your argument in the brief to us is Freedly testified and his testimony was sufficient to establish the necessary nexus. If you believe that, if that's your argument to us, if that's your argument below, why aren't you asking then or why aren't you moving forward and just putting on your commercial success and copying? There's no ruling that I can see of the district court precluding you from doing that. Well the district court was looking to have an expert show how the factual aspects of the implementation matched up. He didn't say that you have to have an expert. All he said was that if Freedly is going to do the claim chart element by element comparison he's not qualified as an expert. He can't do that. But he allowed Freedly to testify as to your installations and to testify that elements in the patent were present in those installations. You say in your brief that that was sufficient to establish that you were practicing the patent and yet you didn't come back and say, well now that we've put in that evidence, please let us put in the evidence of copying and commercial success. Correct? My understanding from the public, is that correct? Well, my understanding from the discussion at Sidebar was that he had made his determination right there, confirming what he had said. Court language in the Sidebar, the Sidebar is directed to whether he can testify as an expert in doing a claim by claim element by element analysis. His underlying position was you need an expert in order to be able to first introduce this. That was the operating principle. All right, all right. Thank you. We'll give you two minutes for rebuttal. Mr. Schmidt. May it please the court. I'm going to rely primarily on our briefs, but I'd like to touch on the obviousness and our cross appeal on the inequitable conduct issue. The obviousness issue really has two aspects, the factual piece and the legal conclusion. The factual issue, of course, is whether there was substantial evidence to support the jury's presumed findings that all of the gram factors were met in this case. Mr. Yanni argues that we didn't corroborate with documentary evidence. I would direct the court's attention, first of all, to the Schroeder article, which was Exhibit 56, the trial. I asked the inventor, I said, in this article, Dr. Schroeder was suggesting exactly what you did in your patent, wasn't he? The answer to that was yes. That's one good piece of prior art. Our own expert went through the operative paragraph, which was on appendix page A14541, and explained how each of these things matched up with what was in the patent claims. One of the arguments being made today is about the temporarily limitation. Can you answer where does the prior art show a modernization device that is only temporarily connected? That was an aspect of the prior art overlay modernization technique in general, that when you put the overlay in, it temporarily operated the new equipment with the old equipment, and when it was finished, you took out the overlay because it was no longer needed. Now the new equipment would operate with the old equipment. There was no rebuttal to that whatsoever. What is your best site and a record for that? That would be Mr. McClendon's expert testimony. Is there a particular reference that says it, or is it just the expert? Not at hand, I'm not sure. The OVASCA patent, which was another piece of prior art, which our expert went through in great detail and identified this purple item in the reference as a modernizing device, as the overlay. He explained that that was taken out after the modernization was finished, because you didn't need it. Would you mind addressing Appellant's arguments about the exclusion of the secondary consideration evidence? Sure. What Judge Andrews did in limiting motions, as the court has indicated, was to say to factual evidence that these commercial items practiced the patent, then I'll reconsider. What I was expecting to happen at trial was once he supposedly did that, I don't agree that he did that, but he says that he did that, then I expected them to put on their commercial people to say, here's the commercial success of these particular things. Here's how it matches up with the features in the claim, not comparing it to the claim language, but just saying people buy this because it has an overlay, or a modernizing device, or some interface device. You don't think they were excluded from putting on evidence of commercial success and copying? No. Well, then why? I kind of agree with your reading of the record, quite frankly, but when I read this motion for a new trial, when they bring up the exclusion of their secondary consideration evidence, he doesn't say what you and I both think this record suggests, which is they were free to put it on, they chose not to, and they didn't bring it back up. Instead, what he says is exclusion was proper because, quote, plaintiff failed to address this issue in any of his expert reports, and thus the evidence was properly barred. So that, you know, you and I might read the record one way, but when the judge says affirmatively the record is the other way, that is really tough. What do we do about that? Well, let's focus on that for a moment, then. The issue was really before the district court whether or not, in this particular case, expert testimony was required to establish the nexus between the commercial success and what is in the patent claim. And he excluded that principally because inventio had not been timely in disclosing  Oh, it was lay-filed. It was lay-filed, and that's not an issue. You're not even appealing that, right? Well, and that was not an abuse of discretion to do that. But they're not appealing it, so we don't have to decide whether it was an abuse of discretion because they're not appealing it. Correct, but I'm addressing the point that you made in there, that he felt that because of the circumstances of the case, because you're basically doing an infringement analysis, that is comparing what was in the commercial product to what was in the patent claim, that expert testimony was necessary. But he did give them that. And he said, if you can put on facts, then I'll reconsider. The problem that inventio created for themselves was they never pursued that. They never went up on sidebar and said, all right, we've put on evidence now. Let us put our commercial people to talk about the connection between the two. And that's what they didn't do. And that's really the problem in the argument. It wasn't excluded. They just didn't take the next step. But the judge says it wasn't excluded. He said, thus, the evidence was properly barred. The judge says he excluded the evidence. They say he excluded the evidence. They certainly came in here thinking, ultimately, he had excluded it. And his own statement is that he did. It was properly barred. So what do we do with this? Well, do we conclude, like, for example, is it your view that in every single case, expert testimony is required? No. There are simple cases where it would not be required. But this case, it would be required, as evidenced by the fact that we both had very qualified experts that talked to infringement and validity. That was just one factor. And the technology was something... So do you think this, maybe his decision here on this evidentiary issue would have been much better insulated had it said, this is complex technology. And I, having heard Mr. Friedley, I can't conclude that he met the bar that's necessary to establish nexus. This is complex technology. You know, you needed to have an expert. They didn't. Therefore, it's properly excluded. Is it your position that I should read that in to his analysis, even though he doesn't say that? Well, I think we ought to read what he said on the record, too, in arriving at that, particularly in the eliminating motion. That was where he said he thought expert testimony would be necessary in this particular case. But if we come to the... Did he say that it would be necessary in this particular case because of complex technology? Yes. Or because you must have expert testimony whenever you do an infringement analysis or an analysis of comparing the claims to something? No, I think it was because of the complexity of the technology in this case. Did he expressly say that? He said he thought there would have to be an infringement analysis, and that would require expert testimony. And I think we could infer from that. That was why he was saying it, because both sides had to put on experts in order to establish infringement or non-infringement. If we come to... I guess the question is, there seems to be a way, in addition to the ruling that Judge seems to have been a waiver in this record for the failure to offer the nexus testimony, that is, the commercial success and the copying, on the theory that the testimony, the lay testimony, if you will, of Friedli was sufficient to establish the nexus and a failure to ask for an instruction on that point. I would agree with you. Yes. If we look to what... He didn't address that issue in the final decision, but... I think that's the ultimate result of what happened here. Did you argue that to us in your brief? Did you argue that they waived the right to challenge the inadmissibility of commercial success and copying evidence because they didn't subsequently raise it again after putting on Mr. Friedli? I don't see you making a waiver argument anywhere in your brief. Did not make a waiver argument. The result of that is... I thought you argued in your brief that they failed to ask for an instruction on this. Correct. So what Mr. Yanni told the court was, well, let us put on the evidence and if the jury finds that there is no nexus and no commercial success, then we'll live with that. Well, all right. That's fine. But then instruct the jury what the effect will be on obviousness if there is commercial success and if there is copying from whatever was in the record. Mr. Yanni says that there was enough in the record... I guess the point is I thought you were arguing in your brief that the failure to ask for the instruction was a bar. That would be a waiver. That was their omission. I mean, my feeling has always been if you want the jury to come back and tell you something, you have to ask for it. And in this case, that would have been instructions, which would have been very easy to put in. The fourth element of the Graham analysis is secondary considerations. Here they all are. And if you find that there's evidence to support them, then you can take them into account in deciding obviousness. Okay. So would it be fair to say that you didn't argue that there was a waiver for the failure to put in the evidence, but you argued that there was a waiver for failure to ask for the instruction? That's correct. That's correct. Now, the upshot of all this is it has to be prejudicial also. Would it have made any difference to the outcome of the case? Copying, we know, is only equivocal evidence of a secondary consideration. And there really wasn't any evidence in this case of copying at all. Haven't our cases said that secondary considerations are important to obviousness? You would have us just ignore that evidence? No, you can't ignore it. You always have to consider it if it's present. But this court has also said that copying is only equivocal evidence of a secondary consideration. And as to the commercial success, there was no evidence put on in this case at all that there was any connection between what was in those commercial units and the commercial success of those units. So that would have been very easy to put on because they had their commercial witness up there. I'd like to address just for a moment the inequitable conduct issue. That is that the district court abused its discretion in making a clearly erroneous factual issue error and an error of law. The factual issue had to do with assessing whether or not there was a fictitious or false disclosure of a mode. And the only evidence in the case about that was that the patent says that the converter 361, which is the critical item that does the conversion function that's in the claim for the modernizing device, was not only commercially available, but it was proven in the electronics industry. And the only evidence in the case was that that was not so. It was not commercially available. It was not proven in the industry. And even the inventor said that at that time, there was not a converter that could do the reports. So that was clearly erroneous. The legal error that the court made was grafting onto this court's principle in the consolidated aluminum case that the inventor has to know that the mode that's disclosed is false or fictitious. And I suggest that that really throws that principle, which has to do with the equivalent of deceptive intent, into the area of actual deceptive intent. Because if you know that something is false, you can infer from that that there is deceptive intent. So I suggest that grafting that additional requirement of knowledge onto the requirement for the consolidated aluminum principle, which was error, because that's a very specialized principle. It's only come up once. And given the change in the AIA, it may never come up again. But in this case, it's applicable because there was intentional withholding of the best mode, and there was a false mode or fictitious mode disclosed. Reserve the rest of my time for rebuttal. OK, thank you, Mr. Schmidt. Mr. Schmidt. In response to the point about whether the district court ever initially determined whether this was or was not complex technology, and then therefore was expert testimony required or not in this connection, that analysis was never made. If you read the trial transcript, and if you read the court's opinion, the starting point is an expert is needed. Therefore, there was no pre-analysis of whether this merits an expert or not in terms of the complexity of the technology. The point about whether there was a waiver or not of being able to present this evidence, that concept is nowhere discussed in the district court's opinion, because I believe the district  because if you go back and look at the pre-trial conference, the discussion around the motions in limine 2 and 3, as well as the trial discussion at sidebar pages 9345 through about 9348 in the appendix, it's pretty clear. I asked the court, I said, now we've put on Dr. Friedley, I'm going to have him do this. He said, well, they're going to start objecting, I'm going to sustain it. But this is just testimony using the claim chart. Yes, which was the gatekeeper. Which is the only thing that got excluded. Excuse me? The only thing he excluded at that point. Yes, but that was then the gatekeeper to having anyone testify about the copying and the commercial excluded that testimony as well. And then on the copying, I heard Mr. Schmidt say that, well, it wouldn't have made a difference in this case. The evidence on this was quite substantial, and because it was designated confidential by Tiss and Krupp, I don't know to what extent I can even bring that up right now. And also, out of time. Yes, but I would ask the court to reconsider that in the totality. Thank you, Mr. Yanni. Thank you. Mr. Schmidt, I think you have a little over a minute here. I would like to remain in time, Your Honor. Oh, you didn't? Pardon me? I would like to remain in time. Okay, thank you. Thank both counsel, the case is submitted.